# EXHIBIT A

**\*\* This Disclosure Statement has been submitted to the Court for conditional approval which approval is currently pending. \*\***

KIRBY AISNER & CURLEY LLP
*Counsel to Plan Proponent/*
        *Secured Lender, Fairbridge Credit LLC*
700 Post Road, Suite 237
Scarsdale, New York 10583
(914) 401-9500
Erica R. Aisner, Esq.
eaisner@kacllp.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| 19 COOPER STREET LLC, | Case No:  23-44663 (ESS) |
| Debtor. | |

-------------------------------------------------------------X

**AMENDED DISCLOSURE STATEMENT PURSUANT
TO SECTION 1125 OF THE BANKRUPTCY CODE FOR AMENDED
CHAPTER 11 PLAN OF LIQUIDATION FOR THE DEBTOR**

Dated: Scarsdale, New York
        September 18, 2025

# I.   **INTRODUCTION**

Secured lender, Fairbridge Credit LLC (the "<u>Secured Lender</u>" or "<u>Plan Proponent</u>") of 19 Cooper Street, LLC, the debtor and debtor in possession in the above-captioned Chapter 11 case (the "<u>Debtor</u>"), provides this Disclosure Statement (the "<u>Disclosure Statement</u>")[1] pursuant to Section 1125(b) of Title 11, United States Code, 11 U.S.C. §§ <u>et</u> <u>seq</u>. (the "<u>Bankruptcy Code</u>") and Rule 3017 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rule 3017-1 of the Local Bankruptcy Rules for the Eastern District of New York, in connection with its Amended Plan of Reorganization dated September 17, 2025 (the "<u>Plan</u>") to all known holders of Claims against or Interests in the Debtor in order to adequately disclose information deemed to be material, important and necessary for the Debtor's creditors to make a reasonably informed judgment about the Plan. A copy of the Plan is attached hereto as **Exhibit "A."** *Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*

The Plan provides the Debtor with the ability to retain the Property if it is successful in satisfying certain funding obligations by a date certain. If the Debtor is unable to do so, the Plan shall "toggle" to a sale of the Property following a marketing process and public auction, as provided for more fully herein and in the Bidding Procedures as approved by the Bankruptcy Court.
.

The Bankruptcy Court has scheduled the hearing to consider final approval of this Disclosure Statement and Confirmation of the Plan for **_____, 2025 at _:00 _.m.** Under section 1126(b) of the Bankruptcy Code, only Classes of Claims that are "impaired" under the Plan, as defined by section 1124 of the Bankruptcy Code, are entitled to vote on the Plan. Generally, a Class is impaired if its legal, contractual or equitable rights are altered or reduced under the Plan. Under the Plan, Classes 2 and 3 are impaired and only Classes 2 and 3 will vote on the Plan.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, THE PLAN AND THIS DISCLOSURE STATEMENT WERE COMPILED FROM INFORMATION ABOUT THE DEBTOR DISCLOSED IN ITS BANKRUPTCY CASE AND OTHER PUBLICLY AVAILABLE SOURCES.

THIS DISCLOSURE STATEMENT CONTAINS A SUMMARY OF CERTAIN PROVISIONS OF THE PLAN. WHILE THE PLAN PROPONENT BELIEVES THAT THE SUMMARY IS FAIR AND ACCURATE, SUCH SUMMARY IS QUALIFIED TO THE EXTENT THAT IT DOES NOT SET FORTH THE ENTIRE TEXT OF THE PLAN. REFERENCE IS HEREBY MADE TO THE PLAN FOR A COMPLETE STATEMENT OF THE TERMS AND PROVISIONS THEREOF.

    **IF ANY INCONSISTENCIES EXIST BETWEEN THE PLAN AND THIS**

---

[1] Unless otherwise defined herein, capitalized terms used in this Disclosure Statement shall be defined as set forth in the Plan.

**DISCLOSURE STATEMENT, THE PLAN SHALL CONTROL.**

THE COURT HAS CONDITIONALLY APPROVED THIS DISCLOSURE STATEMENT BY ORDER DATED ____, 2025 AS CONTAINING ADEQUATE INFORMATION UNDER THE PARTICULAR CIRCUMSTANCES OF THIS CASE. APPROVAL OF THE DISCLOSURE STATEMENT, HOWEVER, IS NOT TO BE CONSTRUED AS AN ENDORSEMENT OF THE PLAN BY THE BANKRUPTCY COURT. CONFIRMATION OF THE PLAN BY THE BANKRUPTCY COURT WILL BE CONSIDERED AT A HEARING TO BE SCHEDULED ON THE PLAN. CREDITORS ARE URGED TO CONSULT WITH EACH OTHER AND THEIR COUNSEL REGARDING THE PLAN.

Accompanying this Disclosure Statement is a copy of the Plan annexed thereto.

## II.     BACKGROUND OF THE CASE

### The Debtor

The Debtor owns the real property known as and located at 19 Cooper Street, Brooklyn, New York 11207 (the "Property"). The Property, built in 1910, is a three-floor building with three residential units, and has a total of 2,937 square feet.

On December 15, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

### The Secured Lender

As set forth in the proof of claim filed with this Court on August 20, 2024 (Claim Number 3), the Secured Lender holds a first mortgage lien against the Property, in the amount of $1,235,862.14, due and owing as of the Petition Date. The Secured Lender will waive any distribution on account of its unsecured deficiency claim in this case as long as the Plan, or any amended version thereof, is confirmed.

### Debtor's Commencement of Voluntary
### Chapter 7 Case and Conversion of Case to Chapter 11

Subsequent to the Petition Date, Debra Kramer was appointed Chapter 7 trustee of the Debtor's estate (the "Trustee").

After discussions had among counsel for Secured Lender, the Trustee, and the Trustee's counsel concerning the sale of the Property, the Trustee filed an application on May 8, 2024, seeking approval of MYC & Associates, Inc., as real estate broker to the Trustee in connection with the sale of the Property [ECF Doc. #27] (the "Broker Retention Application"). This Court approved the Broker Retention Application by order dated May 16, 2024 [ECF Doc. #28].

On May 30, 2024, the Clerk of this Court issued and served a notice of discovery of assets

setting August 28, 2024 as the Bar Date in this case [ECF Doc. #29].

To finalize their discussions concerning the Trustee's sale of the Property, on or around June 6, 2024, the Trustee and Secured Lender executed a stipulation (the "Stipulation") which provided, in relevant part, that "[t]he Trustee will market and sell the Property and Secured Creditor consents to the Trustee's sale of the Property." (Stipulation ¶1). The Trustee's counsel filed the Stipulation with this Court on June 6, 2024 [ECF Doc. #31]. This Court approved the Stipulation on June 7, 2024 [ECF Doc. #32]. Upon information and belief, thereafter, the Trustee's broker marketed the Property for an anticipated auction sale under § 363(a) of the Bankruptcy Code.

On August 27, 2024, counsel for the Trustee advised Secured Lender's counsel that the Trustee had decided not to sell the Property because, in her view, there were an insufficient amount of general unsecured creditors for her to administer the Property. The claims register in this case showed that the only creditors who filed claims, in addition to the Secured Lender, are: (i) New York City Dept. of Finance (secured claim of $5,175.31); (ii) New York State Department of Taxation & Finance (unsecured claim of $652.95); and (iii) NYC Water Board (secured claim of $8,298.39)[2].

On October 1, 2024, Secured Lender filed a motion seeking entry of an order enforcing the Stipulation or authorizing it to sell the Property [ECF Doc. #33] (the "Motion to Enforce"). On October 15, 2024, the Trustee filed a notice of proposed abandonment of the Property [ECF Doc. #35] (the "Abandonment Notice") and an objection to the Motion to Enforce [ECF Doc. #36]. On October 29, 2024, Secured Lender filed an objection to the Abandonment Notice [ECF Doc. #42]. This Court adjourned these matters so that the parties could further brief the issues raised therein.

On January 25, 2025, Secured Lender filed a motion to convert the Debtor's Chapter 7 case to Chapter 11 case [ECF Doc. #51] (the "Conversion Motion"). This Court granted the Conversion Motion; and on March 31, 2025 entered an order converting the Debtor's Chapter 7 case to Chapter 11 case [ECF Doc. #59][3].

On May 12, 2025, the Secured Lender filed a motion to limit the exclusivity period (the "Exclusivity Termination Motion", ECF Doc. #69) for filing a Chapter 11 plan and disclosure statement so that the Secured Lender could implement the sale of the Property pursuant to the Secured Lender's proposed liquidating plan of reorganization. The Exclusivity Termination Motion was granted by this Court on June 27, 2025 [ECF Doc. #71].

On the same day, the Secured Lender filed its Chapter 11 plan of liquidation and disclosure statement [ECF Doc. #72 and #73] proposing that the plan would be funded from the Sale Proceeds and Cash turned over by the Debtor to the Secured Lender or by Cash contributed by the Secured Lender. Subsequently, on July 24, 2025, the Debtor filed a motion to voluntarily dismiss the Chapter 11 Case [ECF Doc. #76] in order to pursue relief outside of bankruptcy. The Secured Lender filed an objection to the same [ECF Doc. #82].

On August 21, 2025, the Secured Lender filed a motion for sale of the Property pursuant

---

2 No other proofs of claim have filed with this case, as of this date.

3 The Trustee thereafter withdrew the Abandonment Notice [ECF Doc. #67] and Secured Creditor thereafter withdrew the Motion to Compel [ECF Doc. #68].

to §363(b) (the "<u>Sale Motion</u>", ECF Doc. #84). A hearing on the Sale Motion was held on September 12, 2025, at which the Court granted the Sale Motion. The proposed Order is currently *sub judice.*

### III.    THE PLAN OF REORGANIZATION

THE FOLLOWING IS A BRIEF SUMMARY OF THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE FULL TEXT OF THE PLAN, A COPY OF WHICH IS ANNEXED HERETO AS **EXHIBIT "A."** THIS SUMMARY SHOULD NOT BE RELIED ON FOR VOTING PURPOSES. CREDITORS ARE URGED TO CONSULT WITH THEIR COUNSEL AND WITH EACH OTHER IN ORDER TO FULLY UNDERSTAND THE PLAN AND EXHIBITS ATTACHED TO IT. THE PLAN IS COMPLEX INASMUCH AS IT REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT BY THE DEBTOR, AND AN INTELLIGENT JUDGMENT CONCERNING SUCH PLAN CANNOT BE MADE WITHOUT UNDERSTANDING IT.

#### A.  General

Section 1123 of the Bankruptcy Code provides that, except for Administrative Claims and Priority Tax Claims, a plan of liquidation must categorize claims against and interests in the debtor into individual classes.  Although the Bankruptcy Code gives a plan proponent significant flexibility in classifying claims and interests, section 1122 of the Bankruptcy Code dictates that a plan of liquidation may only place a claim or an interest into a class containing claims or interests that are substantially similar.

The Plan creates four Classes of Claims and one Class of Interests.  These Classes take into account the differing nature and priority of Claims against and Interests in the Debtor. Administrative Claims, Professional Fee Claims, and Priority Tax Claims are not classified for purposes of voting or receiving Distributions under the Plan (as is permitted by section 1123(a)(1) of the Bankruptcy Code) but are treated separately as unclassified Claims.

The Plan provides specific treatment for each Class of Claims and Interests.  Only Holders of Claims that are Impaired under the Plan, and who will receive Distributions under the Plan are entitled to vote on the Plan.

Unless otherwise provided in the Plan or the Confirmation Order, the treatment of any Claim or Interest under the Plan will be in full satisfaction, settlement, release and (potential) discharge of, and in exchange for, such claim or Interest.

The following discussion sets forth the classification and treatment of all Claims against, or Equity in, the Debtor.

#### B.  Classification and Treatment of Claims and Interests

Article 2 of the Plan segregates the various Claims against, and Interests in the Debtor into unclassified categories and classified claims as follows:

# 1.  **Unclassified Categories of Claims – Administrative Expense Claims**

Administrative Expense Claims include costs by the Debtor after the Petition Date and the fees and expense of Professionals retained by the Debtor.

(a)    Category 1 –Administrative Expense Claims (Other than Professional Fee Claims)

Administrative Expenses are costs or expenses of administration in connection with the Chapter 11 Case, including, without limitation, any actual, necessary costs and expenses of preserving the Debtor's estate and the Property, and all fees and charges assessed against the Debtor's estate pursuant to 28 U.S.C. section 1930. All Non-Professional Administrative Expense Claims. shall be paid by the Disbursing Agent in full within two (2) Business Days of the later of (i) the Effective Date, and (ii) upon the Order Allowing such Professional Claim becoming a Final Order, except as may be mutually agreed upon between the Debtor's estate and the holder of such Professional Claim.

**All Entities or persons asserting an Administrative Expense Claim must file a request for payment of such Administrative Expense Claim on or before 5:00 p.m. prevailing Eastern Time on such date so that the request can be heard by the Court on or before the first noticed date for the Confirmation Hearing.  No payment or Distributions will be made on account of any Administrative Expense Claim until such Claim becomes an Allowed Claim. Any entities or persons asserting an Administrative Expense Claim that fails to file and serve an Administrative Expense Claim on or before the Administrative Expense Claims Bar Date shall be forever barred from asserting any such right to payment as against the Debtor, its estate, or the Property.**

(b)    Category 2 – Administrative Professional Fees

All Allowed Claims of duly retained Professionals shall be paid by the Disbursing Agent in full within two (2) Business Days of the later of (i) the Effective Date, and (ii) upon the Order Allowing such Professional Claim becoming a Final Order, except as may be mutually agreed upon between the Plan Proponent and the holder of such Professional Claim. The Court must approve all professional compensation and expenses. Each Professional Person requesting compensation in the Chapter 11 Case pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and reimbursement of expenses so as to be heard by the Court no later than first date noticed for the Confirmation Hearing.  At present, the Debtor has not sought approval of its counsel from the Court so unless and until such engagement is approved by the Court, no payment is anticipated.

(c)    Category 3 – United States Trustee's Fees

The Disbursing Agent shall pay outstanding United States Trustee statutory fees in full, in Cash, on the Effective Date, to the extent that there is any outstanding balance due at such

time. The Debtor or Debtor's estate shall be responsible for payment of United States Trustee quarterly fees through the entry of a final decree closing the Chapter 11 case.

(d)     Category 4 –Priority Tax Claims

Priority tax claims are unsecured income, employment, sales, and other taxes (excluding real estate taxes which are separately classified) described by Section 507(a)(8) of the Bankruptcy Code. Allowed Priority Tax Claims shall be paid in full, in Cash, on the Effective Date by the Disbursing Agent. The Priority Tax Claims are estimated at $652.95.

**2.   Classified Categories of Claims**

(a)     Class 1 – New York City's Secured Real Estate Tax Claims

Class 1 shall consist of New York City's secured real estate tax claims and unpaid water charges, which are secured by a superior lien on the Property, shall be paid in full plus interest at the applicable statutory rate on the Effective Date by the Disbursing Agent or as directed by the Disbursing Agent. The Class 1 Claims are estimated at approximately $20,000.

The holder of the Class 1 Claim is unimpaired and is deemed to accept the Plan.

(b)     Class 2 – Allowed Secured Claim of Secured Lender

Class 2 shall consist of the Allowed Secured Claim of the Secured Lender, which is secured by a senior mortgage lien on the Property, together with an assignment of all rents and leases. The Allowed Claim of the Secured Lender shall be paid as follows:

The Secured Creditor shall accept the Discounted Payoff on or before the Payoff Deadline in full and final settlement of the Secured Lender Total Claim. However, if the Discounted Payoff is not paid in full on or before the Payoff Deadline (**time of the essence**) and the Debtor Plan Fund fully funded, the Secured Lender shall pursue the Alternative Sale Process on behalf of the Debtor's estate in accordance with the Bidding Procedures and this Plan. The Secured Lender shall receive the remaining net proceeds of sale of the Property, up to 100% of the Secured Lender Total Claim, after the payment of all Allowed unclassified and Class 1 Claims in full.

For purposes of the auction, the Secured Lender shall be permitted to assert a credit bid up to the amount of the Secured Lender Total Claim which is estimated at approximately $1,702.335.09. If the Secured Lender is the winning bidder at auction, it shall be required to fund only the following; (i) all Allowed unclassified Claims, (ii) Allowed Secured Class 1 Claims, (iii) and the lesser of the (x) Allowed Class 3 Claims, and (y) $25,000 (which shall not include any distributions to insiders).

The holder of the Allowed Class 2 Claim is Impaired and as such, is entitled to vote to accept or reject the Plan.

(c) <u>Class 3 – General Unsecured Claims</u>

Class 3 shall consist of Allowed General Unsecured Claims which shall be paid by the Disbursing Agent, the lesser of 100% of their Allowed Claims, without interest or their Pro Rata share of $25,000. The foregoing notwithstanding, in the event of an Alternative Sale Process, Class 3 Creditors shall be paid from the net proceeds of sale of the Property after the payment in full of the Allowed unclassified, Class 1 and Class 2 Claims. In the event that the net sale proceeds are insufficient to fund such distribution, the Secured Lender shall fund the shortfall.

Holders of Allowed Class 3 Claims are Impaired under this Plan and as such, are entitled to vote to accept or reject the Plan.

(d) <u>Class 4 – Interests</u>

Class 4 shall consist of the Debtor's Interest Holder.

In the event that the Discounted Payoff and funding of the Debtor Plan Fund is remitted timely and in full and an Alternative Sale Process does not commence, the Interest Holder's interest in the Debtor will be retained but no distribution will be made on account thereof.

In the event that an Alternative Sale Process is commenced, the Debtor's Interest Holder will retain its interest and shall receive any surplus generated from net proceeds of the sale of the Property after the payment of all Allowed unclassified, Class 1, 2 and 3 Claim in full.

The Class 4 Interest Holder is unimpaired under this Plan and as such, is entitled to vote to accept or reject the Plan.

**3. Funding and Means for Implementation of the Plan**

**A. Plan Funding**

Payments under the Plan due on the Effective Date shall be paid either by the Debtor from the (i) Debtor Plan Fund or (ii) from the proceeds of the sale of the Property following an Alternate Sale Process with the potential additional funding from the Secured Lender.

The Debtor shall have until the Payoff Deadline fund the Debtor Plan Fund in which case title to the Property shall be revested in the reorganized Debtor upon the Effective Date, free and clear of all liens, claims and encumbrances, subject to the obligations of the reorganized Debtor set forth herein. Otherwise, the Property shall remain subject to the senior mortgage lien of the Secured Lender until such time as the Property is sold in the Alternate Sale Process pursuant to the terms of this Plan and the Bidding Procedures. Nothing contained in this Plan shall be deemed to impair or alter the right of the Secured Creditor to assign its mortgage lien to the purchaser of the Property at closing if the parties elect to do so.

### B. Alternative Sale Process

Notwithstanding the Debtor's right to fund the Debtor Plan Fund prior to the Payoff Deadline, upon Confirmation, the Secured Lender shall be authorized to engage the services of a real estate broker/ auctioneer and to utilize their services market the Property for sale. The auction sale may be noticed throughout the marketing process but may not occur until after the Payoff Deadline. The sale of the Property pursuant to the Alternative Sale Process shall be free and clear of all liens, Claims, interests and encumbrances pursuant to Sections 363(f), 1123(a)(5)(D) and 1141(c) of the Bankruptcy Code including, among other things, all violations, whether reduced to judgment or otherwise. The winning bidder of the Property shall be entitled to the protections afforded a buyer pursuant to Section 363(n) of the Bankruptcy Code.

### C. Exemption from Certain Taxes

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Plan as confirmed by the Bankruptcy Court, (including an instrument of transfer executed in furtherance of the Sale Transaction), shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax, mansion tax, or similar tax due on the sale of the Property in connection with or in furtherance of the Plan as confirmed by the Bankruptcy Court and the funding requirements contained herein and shall not be subject to any state, local or federal law imposing such tax and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### C. Additional Plan Provisions

### 1. Resolution of Disputed Claims & Reserves

(a)     Objections.  The Debtor or a party in interest shall file all objections to the allowance of any Claims with the Bankruptcy Court, in writing, no later than thirty (30) days after the Effective Date.

(b)     Disputed Claims Reserve.  Except to the extent the Court determines that a lesser amount is adequate, the Disbursing Agent shall deposit in Cash equal to the distribution hereunder that would have been made to holders of Disputed Claims, on such date and in such amount, that the holder would have received its distribution hereunder if such Claims were Allowed Claims, unless otherwise agreed by the holder or by Order of the Court. Upon request of the Debtor, estimation of any Disputed Claim may be adjudicated by the Court pursuant to section 502(c) of the Bankruptcy Code for purposes of determining the appropriate reserve amount.

### 2. Exculpation

The Plan provides that neither the Secured Lender, nor any of their members, estate fiduciaries, officers, directors, employees, advisors, agents, representatives and assigns (the "Exculpated Parties") shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the chapter 11 case or the Plan and any related agreement except for bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts.

### 3. **Injunction**

The Plan provides for an injunction upon the Effective Date, subject to the terms of the Settlement, against all persons who have held, hold, or may hold Claims or Interests, from taking certain actions against or affecting the Debtor or assets of the Debtor with respect to such Claims, Interests, except as otherwise set forth in the Plan.

### 4. **Retention of Jurisdiction**

The Plan provides for the retention of jurisdiction by the Bankruptcy Court for certain enumerated matters including but not limited to, matters which may be necessary to carry out the Plan or resolve disputes relating to the Plan, resolution and litigation (if necessary) on Disputed Claims and to recover assets.

### 5. **Contracts and Unexpired Leases**

Article V of the Plan provides for the mechanism for the assumption or rejection of unexpired leases and executory contracts which include tenant leases. It provides that all Executory Contracts and Unexpired Leases to which Debtor is a party, unless a separate motion to reject is made or order entered, shall be deemed rejected in accordance with Section 365 of the Bankruptcy Code. Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be treated as Unsecured Claims and shall be filed with the Bankruptcy Court and served so that it is received by the Debtor and the Secured Creditor no later than ten (10) days prior to the first date noticed for the Confirmation Hearing. Any such Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor or the Property.

### IV. **PLAN CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in Section 1129 of the Bankruptcy Code. The requirements include, but are not limited to: the proposal of the Plan in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor at least as much as the creditor would receive in

a chapter 7 liquidation case, unless the creditor votes to accept the Plan; and the Plan must be feasible.

## A.     **Who May Vote or Object**

Any party in interest may object to the Confirmation of the Plan if the party believes that the requirements for Confirmation are not met. Certain parties in interest, however, are not entitled to vote to accept or reject the Plan. A Creditor has a right to vote for or against the Plan only if that Creditor has a Claim that is both (1) Allowed or Allowed for voting purposes and (2) Impaired. In this case, Classes 2 and 3 are Impaired under the Plan and Holders of Claims in those Classes are entitled to vote to accept or reject the Plan.

### *1.     What is an Allowed Claim?*

Only a creditor with an Allowed Claim has the right to vote on the Plan. Generally, a Claim is Allowed if either (a) the Debtor has scheduled the Claim on the Debtor's Schedules, unless the Claim has been scheduled as disputed, contingent or unliquidated, or (b) the Creditor has filed a proof of Claim, unless an objection has been filed to such proof of Claim. When a claim is not Allowed, the creditor holding the Claim cannot vote unless the Bankruptcy Court, after notice and hearing, either overrules the objection or Allows the Claim for voting purposes pursuant to Bankruptcy Rule 3018(a).

### *2.     What is an Impaired Claim?*

As noted above, the Holder of an Allowed Claim has the right to vote only if it is in a Class that is Impaired under the Plan. As provided in § 1124 of the Bankruptcy Code, a Class is considered Impaired if the Plan alters the legal, equitable or contractual rights of the members of that Class.

### *3.     Who is Not Entitled to Vote?*

The Holders of the following five types of Claims are not entitled to vote:

- Holders of Claims that have been disallowed by an order of the Bankruptcy Court or as to which there is a claims objection motion pending;
- Holders of other Claims that are not Allowed Claims (as discussed above), unless they have been Allowed for voting purposes;
- Holders of Claims in unimpaired Classes;
- Holders of Claims entitled to priority pursuant to § 507(a)(2), (a)(3), and (a)(8) of the Bankruptcy Code;
- Holders of Claims in Classes that do not receive or retain any value under the Plan; and
- Administrative expenses.

4. *Who Can Vote in More Than One Class?*

A Creditor whose Claim has been Allowed in part as a Secured Claim and in part as an Unsecured Claim, or who otherwise holds Claims in multiple classes, is entitled to accept or reject a plan in each capacity and should cast one ballot for each Claim.

**B.  Votes Necessary to Confirm the Plan**

If Impaired Classes exist, the Bankruptcy Court cannot confirm the Plan unless (i) at least one Impaired Class of Creditors has accepted the Plan without counting the votes of any Insiders within that Class, and (ii) all impaired Classes have voted to accept the Plan.

A Class of Claims accepts the Plan if both of the following occur: (a) the Holders of more than one-half (1/2) of the Allowed Claims in the Class, who vote, cast their votes to accept the Plan, and (b) the Holders of at least two-thirds (2/3) in dollar amount of the Allowed Claims in the Class, who vote, cast their votes to accept the Plan. **The Holders of Claims in Classes 2 and 3 are Impaired and entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited. Classes 1 and 4 are not Impaired under this Plan and are, therefore, conclusively presumed to have accepted this Plan.**

**C.  Fair and Equitable Test; Cramdown**

Notwithstanding a rejection by a Class of Impaired Claims, the Bankruptcy Court may Confirm the Plan and the Plan will be binding upon all Classes, including the Class rejecting the Plan, if it is demonstrated to the Bankruptcy Court that at least one Impaired Class of Claims has accepted the Plan and the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to the non-accepting Class. A plan does not discriminate unfairly if the legal rights of a dissenting class are treated in a manner consistent with the treatment of other Classes whose legal rights are similar to those of the dissenting class and if no Class receives more than it is entitled to on account of its Claims or Interests.

Under the Bankruptcy Code, the Debtor's Plan is "fair and equitable" as to a non-accepting impaired Class of Unsecured Claims if it provides that each Holder of a Claim in such Class receive or retain on account of such Claim property of a value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim, or the Holder of any Claim or Interest that is junior to the Claims of such Class will not receive or retain under the Plan on account of such junior Claim or Interest any property.

**D.  Feasibility**

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor, unless such liquidation or reorganization is proposed in the Plan.

The amount necessary to consummate the Plan is computed as follows:

| | |
|---|---|
| Non-Professional Administrative Claims – (est.) | $0 |
| Administrative Claims - Professional Fees (estimated) | $0 |
| Administrative Claims – UST Fees | $10,500.00 |
| Priority Tax Claims (estimated) | $653.00 |
| Class 1 – Allowed New York City's Claim | $20,000.00 |
| Class 2 – Allowed Secured Claim of the Secured Lender | $0[4] |
| Class 3 – Allowed General Unsecured Claim | $9,000.00 |
| Class 4 – Debtor's Interest Holder | $0 |

You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.

### E. <u>Who May Object</u>

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

### F. <u>Confirmation</u>

#### 1. <u>Confirmation hearing</u>

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of a plan. Notice of the confirmation hearing of the Plan has been provided to all known holders of Claims and Interests or their representatives along with this Disclosure Statement. The confirmation hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the confirmation hearing or any subsequent confirmation hearing. At the confirmation hearing, the Bankruptcy Court will (i) hear and determine all objections to the Plan and to confirmation of the Plan; (ii) determine whether the Plan meets the requirements of the Bankruptcy Code and has been proposed in good faith; and (iii) confirm or refuse to confirm the Plan.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of a plan. Any objection to confirmation of the Plan must be in writing, must conform with the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, must set forth the name of the objectant, the nature and amount of Claims or Interests held or asserted by the objectant against the Debtor's estate or property, and the basis for the objection and the specific grounds in support thereof. Such objection must be filed with the Bankruptcy Court together with proof of service thereof, and served upon:

To the Debtor:

19 Cooper Street LLC

---

4 No Cash is required on Confirmation for the Secured Lender. It shall either receive the Discounted Payoff on the Effective Date or it will receive proceeds from the sale of the Property under the Alternate Sale Process.

McKinley Onua & Associates
233 Broadway, Suite 2348
New York, NY 10279
Attn: Nnenna Okike Onua, Esq.

with a copy to Secured Lender's counsel:

Kirby Aisner & Curley LLP
700 Post Road, Suite 237
Scarsdale, NY 10583
Attn: Erica Aisner, Esq.

and the Office of the United States Trustee:

Office of the United States Trustee
Eastern District of NY (Brooklyn)
Alexander Hamilton Custom House
One Bowling Green, Room 510
New York, NY 10004-1408
Attn: Shannon Scott, Esq.

so as to be received no later than the date and time designated in the notice of the Confirmation hearing.

## 2. <u>Statutory Requirements for Confirmation of the Plan</u>

At the confirmation hearing, the Plan Proponent will request that the Bankruptcy Court determine that the Plan satisfies the requirements of section 1129 of the Bankruptcy Code. If so, the Bankruptcy Court shall enter an order confirming the Plan. The applicable requirements of section 1129 of the Bankruptcy Code are as follows:

(a) The Plan must comply with the applicable provisions of the Bankruptcy Code;

(b) The Debtor must have complied with the applicable provisions of the Bankruptcy Code;

(c) The Plan has been proposed in good faith and not by any means forbidden by law;

(d) Any payment made or promised to be made by the Debtor/Disbursing Agent under the Plan for services or for costs and expenses in, or in connection with, the chapter 11 case, or in connection with the Plan and incident to the Chapter 11 case, has been disclosed to the Bankruptcy Court, and any such payment made before confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable;

(e)    <u>Feasibility and "Best Interest" Tests</u>:

The Bankruptcy Code requires that in order to confirm the Plan the Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor (the "<u>Feasibility</u> <u>Test</u>"). The Plan satisfies the Feasibility Test because the Plan proposes a mechanism by which the Property will be auctioned and the assets distributed in accordance with the priority scheme of the Bankruptcy Code.

The Bankruptcy Court must also determine that the values of the distributions to be made under the Plan to each Class will equal or exceed the values which would be allocated to such Class in a liquidation under Chapter 7 of the Bankruptcy Code, absent their consent to different treatment (the "<u>Best</u> <u>Interest</u> <u>Test</u>"). To determine if the Plan is in the best interest of each Class, the probable results of Chapter 7 liquidation must be compared with the results proposed under the Plan.

The Best Interest Test is satisfied in this case because (i) Secured Lender has consented to the Discounted Payoff which is significantly less than the Allowed Class 2 Claim which it would be entitled to claim in a liquidation, and (2) the remaining creditors are receiving more than they would in a liquidation.
In a Chapter 7,

i.    Secured Lender would not guarantee funding the plan and the offer of the Discounted Payoff. Instead it would be entitled to recover the full amount of its Allowed Class 2 Claim which is in excess of $1,700,000.

ii.    Any disposition of the Property would be delayed during which time Administrative Expenses, amounts due to New York City for real estate taxes and water, and interest and costs due to the Secured Creditor would grow, thereby reducing any potential recovery to general Unsecured Creditors.

iii.    The recovery would further be reduced by the additional administrative costs of a Chapter 7 and the trustee's professionals which would be paid prior to any unsecured creditors receiving a distribution.

As set forth above, the Secured Lender submits that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, including the "best interest" and feasibility requirements. The Plan is "fair and equitable" and "does not discriminate unfairly." The Plan complies with all other requirements of Chapter 11 of the Bankruptcy Code and the Plan has been proposed in good faith.

G.    **Financial Information**

(a)    <u>Debtor's Schedules of Assets and Liabilities</u>. Schedules of the Debtor's assets and

liabilities have been respectively filed with the Clerk of the Court and may be inspected by all interested parties.

(b)    <u>Post-Petition Liabilities</u>. All Allowed post-petition liabilities will be paid in full under the Plan, subject to the filing of timely Claims and the Allowance thereof by the Court.

(c)    <u>Liquidation Analysis</u>. As set forth above, were the estate liquidated under Chapter 7 of the Bankruptcy Code as opposed to the means set forth herein, holders of Claims would certainly receive less.

# V.    <u>POST-CONFIRMATION MATTERS</u>

## A.    Disbursement of Funds and Delivery of Distribution

The Disbursing Agent shall the Secured Lender (the "<u>Disbursing Agent</u>") which appointment shall be effective upon entry of the Confirmation Order becoming a Final Order. The Disbursing Agent shall be granted the authority to delegate its duties to its counsel, Kirby Aisner & Curley LLP ("<u>KAC</u>").

Neither the Disbursing Agent nor KAC shall be liable for any distributions obligated under or made in accordance with this Plan. Neither the Disbursing Agent nor KAC shall be liable to the Debtor, any creditor or any other person, firm or corporation, for any error of judgment or for any mistake of law or fact or any act done caused to be done, or omitted to be done, by the Disbursing Agent or any or its agents. The Disbursing Agent shall be liable only for acts of willful misconduct, gross negligence or breach of fiduciary duty by itself or such agents. Neither the Disbursing Agent nor KAC shall have an obligation to file tax returns (other than ACRIS documents) or similar reports with the appropriate taxing authorities.

## B.    Unclaimed Cash

In the event any holder of a Claim fails to claim any distribution within ninety (90) days from the date of such distribution, such holder shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for which such cash was distributed shall be treated as a disallowed Claim.

Distributions to holders of a Claim entitled thereto shall be sent to their last known address set forth on a proof of claim filed with the Bankruptcy Court or if no proof of claim is filed, on the Schedules filed by the Debtor, as may have been amended from time to time, or to such other address as may be designated by a Creditor, such notification having been received at least two (2) weeks prior to a distribution so as to allow the Debtor adequate time to update its records. Nothing contained in the Plan or this Disclosure Statement will require the Disbursing Agent to attempt to locate any holder of an Allowed Claim.

# VI.  TAX CONSEQUENCES OF CONFIRMATION

Because the tax consequences to each Holder of a Claim against or Interest in the Debtor may vary depending upon such Holder of a Claim's or Interest's particular circumstances, all Holders of Claims against or Interests in the Debtor and other persons affected by the Plan should consult their own tax advisor for a complete analysis of the tax consequences resulting from the confirmation of this Plan.

## A.    Tax Consequences to the Debtor.

The Debtor may not recognize income as a result of the discharge of debt pursuant to the Plan because section 108 of the Internal Revenue Code provides that taxpayers in bankruptcy proceedings do not recognize income from discharge of indebtedness.  However, a taxpayer is required to reduce its "tax attributes" by the amount of the debt discharged.  Tax attributes are reduced in the following order:  (i) net operating losses; (ii) general business credits; (iii) capital loss carryovers; (iv) basis in assets; (v) passive activity loss and credit carryovers; and (vi)  foreign tax credit carryovers.

## B.    Tax Consequences to Unsecured Creditors.

An unsecured creditor that receives cash in satisfaction of its Claim may recognize gain or loss, with respect to the principal amount of its Claim, equal to the difference between (i) the creditor's basis in the Claim (other than the portion of the Claim, if any, attributable to accrued interest), and (ii) the balance of the cash received after any allocation to accrued interest.  The character of the gain or loss as capital gain or loss, or ordinary income or loss, will generally be determined by whether the Claim is a capital asset in the creditor's hands.  A creditor may also recognize income or loss in respect of consideration received for accrued interest on the Claim. The income or loss will generally be ordinary, regardless of whether the creditor's Claim is a capital asset in its hands.

# VII.   ALTERNATIVES TO THE PLAN AND CONSEQUENCES OF NOT CONFIRMING

Among the possible consequences if the Bankruptcy Court should not confirm the Plan are the following: (1) an alternative plan could be proposed or confirmed; or (2) the Chapter 11 case could be converted to liquidation under Chapter 7 of the Bankruptcy Code.

## A.    Alternative Plans

The Plan Proponent believes that the Plan is the best opportunity to recover for Creditors on their Allowed Claims and Interests. It is extremely unlikely that any alternate chapter 11 plan could possibly propose treatment which is better than the Plan given that it would not include the failsafe mechanisms of Alternative Sale Process. Moreover, any alternate plan, which has yet to be proposed would certainly carry with it delay, cost and risk, none of which would be in the interests of the Creditors or the estate.

**B.     Chapter 7 Liquidation**

As discussed at length above in connection with the Best Interest Test, the Debtor believes that if this Chapter 11 case was converted to Chapter 7 liquidation, holders of Claims would receive a significantly decreased distribution, if any distribution at all, and would suffer delay in receipt thereof. If the Plan is not Confirmed, the Chapter 11 Case may be converted to a case under chapter 7 of the Bankruptcy Code.  The Secured Lender believes that any such conversion would likely reduce any distribution to holders of Claims based on, among other things, the (i) increased costs of a chapter 7 case arising from the commissions payable to a chapter 7 trustee and fees payable to professional advisors to such trustee; and (ii) substantially longer period of time that would elapse until distributions could be made under chapter 7.  In addition, the Secured Lender will seek relief from the automatic stay and pursue its state law remedies, including foreclosing on the Property, in the event the Plan is not confirmed and the case is converted to chapter 7.

## VIII.     <u>RECOMMENDATION AND CONCLUSION</u>

The Plan Proponent and its professional advisors have analyzed different scenarios and believe that the Plan is preferable to a conversion to a case under Chapter 7 of the Bankruptcy Code. The Plan will provide greater recoveries than those available in liquidation to all holders of Claims.  Any other alternative would cause significant delay and uncertainty, as well as substantial administrative costs.

ACCORDINGLY, THE PLAN PROPONENT BELIEVES THAT THE PLAN PROVIDES THE BEST RECOVERY POSSIBLE FOR CLAIMHOLDERS.

Dated: Scarsdale, New York
          September 18, 2025                    FAIRBRIDGE CREDIT LLC


                                            By:  _/s/ John C. Lettera_____
                                            John C. Lettera, Esq. Managing Member

KIRBY AISNER & CURLEY LLP
*Attorneys for Plan Proponent/Secured Creditor,*
*Fairbridge Credit LLC*
700 Post Road, Suite 237
Scarsdale, New York 10583
(914) 401-9500

By:*/s/ Erica R. Aisner*
     Erica R. Aisner, Esq.

Exhibit "A"

**KIRBY AISNER & CURLEY LLP**
*Counsel to Plan Proponent/*
        *Secured Lender, Fairbridge Credit LLC*
700 Post Road, Suite 237
Scarsdale, New York 10583
(914) 401-9500
Erica R. Aisner, Esq.
eaisner@kacllp.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>19 COOPER STREET LLC,<br><br>                              Debtor. | Chapter 11<br><br>Case No. 23-44663 (ESS) |

## SECURED LENDER FAIRBRIDGE CREDIT LLC'S AMENDED
## CHAPTER 11 PLAN OF LIQUIDATION FOR THE DEBTOR

Secured creditor, Fairbridge Credit LLC, respectfully submits this Amended Chapter 11 Plan pursuant to Chapter 11, Title 11 of the United States Code and specifically Section 1121(c).

This Plan is what is commonly referred to as a "toggle plan." Although set forth more fully herein, in summary, the Plan provides the Debtor with the ability to retain the Property (as defined below) if it is successful in satisfying certain funding obligations by a date certain. If the Debtor is unable to do so, the Plan shall "toggle" to a sale of the Property following a marketing process and public auction, as provided for more fully herein and in the Bidding Procedures as approved by the Bankruptcy Court.

# ARTICLE I
## DEFINITIONS

For purposes of this Plan, except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in this Section of the Plan. In all references herein to any parties, persons, entities, or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require.

1.1     Administrative Expense(s) shall mean any Claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) the actual, necessary costs and expenses incurred by the Debtor after the Petition Date of preserving the Estate or operating the Debtor's business; (b) Allowed Claims pursuant to section 503(b)(9) of the Bankruptcy Code; and (c) any Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court.

1.2     Administrative Expense Claims Bar Date shall mean twenty-one (21) days prior to the first date noticed for the Confirmation Hearing.

1.3     Allowed when used as an adjective preceding the words "Claim", shall mean any Claim against the Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of Claim against the Debtor, or, if no proof of Claim or Equity Interest is filed, which has been or hereafter is listed by the Debtor as liquidated in an amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been interposed and such Claim has been allowed in whole or in part by a Final Order.

1.4     Alternative Sale Process shall mean the procedures set forth in more detail in the Bidding Procedures, as approved by the Bankruptcy Court, whereby if the Debtor fails to timely and fully pay the Discounted Payoff and fully funds the Debtor Plan Fund by the Payoff Deadline, then the Property shall immediately and indefinitely become subject to a bankruptcy auction process to be conducted by the Secured Lender on behalf of the Debtor's estate.

1.5     Avoidance Actions means any Causes of Action to avoid or recover a transfer of property of any of the estate or an interest of the Debtor's estate in property, including, without limitation, actions arising under sections 506, 510, 541, 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other applicable federal, state or common law.

1.6     Ballot shall mean the form distributed to the holder of an Impaired Claim on which it is to be indicated whether such holder accepts or rejects the Plan.

1.7     Bankruptcy Code shall mean the Bankruptcy Reform Act of 1978, as amended, and as codified in Title 11 of the United States Code.

1.8     Bankruptcy Court shall mean the United States Bankruptcy Court for the Eastern District of New York having jurisdiction over the Chapter 11 Case and, to the extent of any reference made pursuant to 28 U.S.C. Section 158, the unit of such District Court constituted pursuant to 28 U.S.C. Section 151.

1.9     Bankruptcy Rules shall mean the rules and forms of practice and procedure in bankruptcy, promulgated under 28 U.S.C. Section 2075 and also referred to as the Federal Rules of Bankruptcy Procedure.

1.10    Bar Date shall mean the deadline set pursuant to Court Order by which certain creditors are required to file proofs of claim or forever be barred from doing so and from sharing in any distribution pursuant to this Plan.

1.11    Bidding Procedures are the terms and conditions, as entered and approved by the Bankruptcy Court, by which the Property shall be auctioned in the event of an Alternative Sale Process.

1.12    Business Day shall mean and refer to any day except Saturday, Sunday, and any other day on which commercial banks in New York are authorized by law to close.

1.13    Causes of Action shall mean  any and all Claims, rights, actions, chose in action, suits, and causes of action belonging to the Debtor or its estate and any and all liabilities, obligations, covenants, undertakings and debts owing to any of the estate, whether arising prior to or after the applicable Petition Date, and in each case whether known or unknown, in law, equity or otherwise, including but not limited to Avoidance Actions.

1.14    Chapter 11 Case shall mean the Chapter 11 case of the Debtor.

1.15    Claim shall mean as such term is defined in Section 101(5) of the Bankruptcy Code.

1.16    Claimant shall mean the holder of a Claim.

1.17    Class shall mean a grouping of substantially similar Claims for common treatment thereof pursuant to the terms of this Plan.

1.18    Closing or Closing Date shall mean, in the event of that an Alternative Sale Process is triggered, the date that the Property is transferred to the successful bidder following an auction sale.

1.19    Confirmation shall mean the entry of an Order by this Court approving the Plan in accordance with the provisions of the Bankruptcy Code.

1.20     Confirmation Hearing shall mean a hearing conducted before the Bankruptcy Court for the purpose of considering Confirmation of the Plan.

1.21     Confirmation Order shall mean an Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.22     Creditor shall mean any person that has a Claim against the Debtor that arose on or before the Petition Date or a Claim against the Debtor's estate of any kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code. This includes all persons, corporations, partnerships, or business entities holding Claims against the Debtor.

1.23     Debtor shall mean 19 Cooper Street LLC.

1.24     Debtor's Plan Fund shall mean the amount of money that the Debtor, or its principal, shall be required to fund to the Disbursing Agent to avoid an Alternate Sale Process being triggered. Such funding includes the payment of the Discounted Payoff, commission due to the retained auctioneer (1.5% of Discounted Payoff) and Allowed unclassified, Class 1 and Class 3 Creditors on or before the Payoff Deadline, *time of the essence*.

1.25     Disbursing Agent shall mean the Secured Lender, for the purpose of making all distributions provided for under the Plan, to the extent that such distributions are not otherwise remitted directly from Sale Proceeds at Closing, in the event of an Alternative Sale Process.

1.26     Disputed Claim shall mean the whole or any portion of any Claim against the Debtor to which an objection is timely filed as to which a Final Order has not been entered allowing or disallowing such Claim or any portion thereof.

1.27     Disclosure Statement means and refers to the Amended Disclosure Statement and any amendments filed by the Secured Lender as required pursuant to Section 1125 et seq. of the Bankruptcy Code.

1.28     Discounted Payoff means the sum of $1,300,000, which the Secured Lender has agreed to accept in full satisfaction of its Allowed Class 2 Secured Claim, provided such amount is paid in full no later than the Payoff Deadline, *time of the essence*.

1.29     Effective Date shall mean the earlier to occur of, (i) the Closing Date or (ii) Debtor's Plan Funding, which shall in no event be earlier than the Confirmation Order becoming a Final Order.

1.30     Final Order shall mean an order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals from the Bankruptcy Court which, not having been reversed, modified, or

amended, and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become final and is in full force and effect.

1.31    Impaired when used as an adjective preceding the words "Class of Claims" shall mean that the Plan alters the legal, equitable, or contractual rights of the member of that Class.

1.32    Insiders shall have the meaning as defined in Section 101(31) of the Bankruptcy Code.

1.33    Interest or Interest Holder shall mean Shomar Nickle, the Debtor's sole member.

1.34    Payoff Deadline shall mean the Effective Date of the Plan, *time of the essence*.

1.35    Person shall mean an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government or any political subdivision thereof or other entity.

1.36    Petition Date shall mean December 15, 2023, the date the involuntary petition was filed against the Debtor.

1.37    Plan shall mean this Amended Chapter 11 Plan filed in the Chapter 11 Case, together with any additional modifications and amendments.

1.38    Priority Non-Tax Claim shall mean a Claim entitled to priority under Sections 507(a)(2), (3), (4), (5), (6) or (7) of the Bankruptcy Code, if Allowed.

1.39    Priority Tax Claim shall mean any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code, if Allowed.

1.40    Priority Tax Creditor shall mean a Creditor holding a Priority Tax Claim.

1.41    Proceeding shall mean the Chapter 11 Case of the Debtor.

1.42    Professional Fee Claim means and refers to a Claim by any and all Professional Persons as provided for in Sections 327, 328, 330, 331 and 503(b) of the Bankruptcy Code.

1.43    Professional Persons means and refers to all attorneys, accountants, appraisers, consultants, and other professionals retained or to be compensated pursuant to an Order of the Bankruptcy Court entered under Sections 327, 328, 330 or 503(b) of the Bankruptcy Code.

1.44     Property shall refer to real property owned by the Debtor located at 19 Cooper Street, Brooklyn, New York 11207, Block 3432, Lot 52.

1.45     Secured Claim means and refers to a Claim which is secured by a valid lien, security interest, or other interest in property in which the Debtor has an interest which has been perfected properly as required by applicable law, but only to the extent of the value of the Debtor's interest in such property, determined in accordance with Section 506(a) of the Bankruptcy Code.

1.46     Secured Lender shall mean Fairbridge Credit LLC, the plan proponent.

1.47     Secured Lender Total Claim shall mean the amount due to the Secured Lender as of the Petition Date in the amount of $1,255,597, as set forth in the amended proof of claim (claim register number 4-1), plus all amounts which have come due post-Petition Date including but not limited to accrued default interest, legal fees, costs and protective advances (if any).

1.48     Unsecured Claim shall mean any Claim against the Debtor which arose or which is deemed by the Bankruptcy Code to have arisen prior to the Petition Date, and which is not (i) a secured claim pursuant to Section 506 of the Bankruptcy Code, as modified by Section 1111(b) of the Bankruptcy Code, or (ii) a Claim entitled to priority under Sections 503 or 507 of the Bankruptcy Code. "Unsecured Claims" shall include all Claims against the Debtor that are not expressly otherwise dealt with in the Plan.

2.     **Other Definitions.** A term used and not defined herein but that is defined in the Bankruptcy Code shall have the meaning set forth therein. The words "herein", hereof, "hereto", "hereunder", and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. Moreover, some terms defined herein are defined in the section in which they are used.

<u>**ARTICLE II**</u>

**CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**A. Unclassified Claims**

**1. Administrative Claims**

a.     *Non-Professional Administrative Expense Claims.* shall be paid by the Disbursing Agent in full within two (2) Business Days of the later of (i) the Effective Date, and (ii) upon the Order Allowing such Professional Claim becoming a Final Order, except as may be mutually agreed upon between the Plan Proponent and the holder of such Professional Claim.

**\*\*DEADLINE: Entities or persons asserting an Administrative Expense Claim must file a request for payment of such Administrative Expense Claim on or before 5:00 p.m. prevailing Eastern Time on such date so that the request can be heard by the Court on or before the first noticed date for the Confirmation Hearing.  No payment or Distributions will be made on account of any Administrative Expense Claim until such Claim becomes an**

**Allowed Claim. Any entities or persons asserting an Administrative Expense Claim that fails to file and serve an Administrative Expense Claim on or before the Administrative Expense Claims Bar Date shall be forever barred from asserting any such right to payment as against the Debtor, its estate, or the Property.**

b. *Payment of Professional Claims.* Except as otherwise provided herein, all Professional Claims shall be paid by the Disbursing Agent in full within two (2) Business Days of the later of (i) the Effective Date, and (ii) upon the Order Allowing such Professional Claim becoming a Final Order, except as may be mutually agreed upon between the Debtor's estate and the holder of such Professional Claim. The Court must approve all professional compensation and expenses. Each Professional Person requesting compensation in the Chapter 11 Case pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and reimbursement of expenses so as to be heard by the Court no later than first date noticed for the Confirmation Hearing.

**2. United States Trustee's Fees**.

The Disbursing Agent shall pay outstanding United States Trustee statutory fees in full, in Cash, on the Effective Date, to the extent that there is any outstanding balance due at such time. The Debtor or Debtor's estate shall be responsible for payment of United States Trustee quarterly fees through the entry of a final decree closing the Chapter 11 case.

**3. Priority Tax Claims**

All Priority Non-Tax Claims and Priority Tax Claims (excluding real estate taxes which are separately classified), shall be paid in full on the Effective Date by the Disbursing Agent.

**B. Classified Claims**

**1. Class 1**

Class 1 shall consist of New York City's secured real estate tax claims and unpaid water charges, which shall be paid in full plus interest at the applicable statutory rate on the Effective Date either directly or as directed by the Disbursing Agent. The City of New York as the holder of the sole Class 1 Claim is unimpaired and is deemed to accept the Plan.

**2. Class 2**

Class 2 shall consist of the Allowed Secured Lender Total Claim, which is secured by a senior mortgage lien on the Property, together with an assignment of all rents and leases. The Allowed Class 2 Secured Claim shall be paid as follows:

The Secured Lender shall accept the Discounted Payoff on or before the Payoff Deadline in full and final settlement of the Secured Lender Total Claim. However, if the Discounted Payoff and Debtor Plan Fund is not paid/ funded in full on or before the Payoff Deadline (**time of the essence**), the Secured Lender shall pursue the Alternative Sale Process on behalf of the Debtor's estate in accordance with the Bidding Procedures and this Plan. The Secured Lender shall receive the

remaining net proceeds of sale of the Property, up to 100% of the Secured Lender Total Claim, after the payment of all Allowed unclassified and Class 1 Claims in full.

For purposes of the auction, the Secured Lender shall be permitted to assert a credit bid up to the amount of the Secured Lender Total Claim. If the Secured Lender is the winning bidder at auction, it shall be required to fund only the following; (i) all Allowed unclassified Claims, (ii) Allowed Secured Class 1 Claims, (iii) and the lesser of the (x) Allowed Class 3 Claims, and (y) $25,000 (which shall not include any distributions to insiders).

The holder of the Allowed Class 2 Claim is Impaired and as such, is entitled to vote to accept or reject the Plan.

### 3. Class 3

Class 3 shall consist of Allowed General Unsecured Claims which shall be paid by the Disbursing Agent, the lesser of 100% of their Allowed Claims, without interest or their Pro Rata share of $25,000. The foregoing notwithstanding, in the event of an Alternative Sale Process, Class 3 Creditors shall be paid from the net proceeds of sale of the Property after the payment in full of the Allowed unclassified, Class 1 and Class 2 Claims. If the net sale proceeds are insufficient to fund such distribution, the Secured Lender shall fund the shortfall.

Holders of Allowed Class 3 Claims are Impaired under this Plan and as such, are entitled to vote to accept or reject the Plan.

### 4. Class 4

Class 4 shall consist of the Debtor's Interest Holder. In the event that the Discounted Payoff is remitted and Debtor Plan Fund funded timely and in full and an Alternative Sale Process does not commence, the Interest Holder's interest in the Debtor will be retained but no distribution will be made on account thereof.

In the event that an Alternative Sale Process is commenced, the Debtor's Interest Holder will retain its interest and shall receive any surplus generated from net proceeds of the sale of the Property after the payment of all Allowed unclassified, Class 1, 2 and 3 Claim in full.

The Class 4 Interest Holder is unimpaired under this Plan and as such, is not entitled to vote to accept or reject the Plan.

### 5. Disbursing Agent

Secured Lender shall act as the Disbursing Agent, which appointment shall be effective upon entry of the Confirmation Order becoming a Final Order. The Disbursing Agent shall be granted the authority to delegate its duties to its counsel, Kirby Aisner & Curley LLP ("KAC"). Neither the Disbursing Agent nor KAC shall be deemed to be an officer, fiduciary or agent of the Debtor. The Disbursing Agent, or KAC, as designated by the Disbursing Agent, shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan, (ii) make, or direct payment of all distributions contemplated hereby, (iii)

employ and compensate professionals to represent it with respect to its responsibilities, (iv) procure insurance against the Property or secure, maintain, repair or restore the Property, as may be necessary, (v) demand and obtain, formally or informally, including issuing subpoenas or seeking copies of books and records of the Debtor from third parties, including but not limited to bookkeepers, accountants and banks, as may be necessary on behalf of the Debtor to effect the terms and conditions of the Plan, the transactions contemplated thereunder, the administration of the Chapter 11 Case, and/or the operations of the Property, and (vi) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof. Furthermore, the Disbursing Agent shall have the express authority to execute a deed to convey the Property and other conveyance documents in place, and stead of the Debtor, or other authorized parties of the Debtor, and shall have no other powers or authority with respect to the Debtor.

The Disbursing Agent and KAC shall have no obligation to file tax returns (other than ACRIS documents) or similar reports with the appropriate taxing authorities. The Disbursing Agent and KAC shall not have, or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, except in the case of gross negligence, willful misconduct, criminal conduct, or for any liability pursuant to 28 U.S.C. § 959 solely in connection with carrying out of its duties under the Plan, which liability shall be expressly limited to the period commencing from the Effective Date of the Plan and ending on the date that all disbursements in accordance with the Plan have been distributed.

6. **Time and Method of Distribution**

All distributions to holders of Allowed Claims shall be made at the address of each holder as set forth in the Debtor's schedules or as set forth in any proof of claim filed by such Creditor. No payment of fractions of units will be made under the Plan. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

If any distribution is not deposited or negotiated by a creditor within 90 days of the distribution being made thereto, then such Creditor shall forfeit said distribution and any future distribution under the Plan that such Creditor would have been otherwise entitled to receive and the monies shall be returned to the Secured Lender unless the Secured Lender Total Claim is paid in full, in which case they shall be distributed in accordance with the terms of this Plan.

The Disbursing Agent shall not be obligated to make any distribution which is less than $25.

If any payment or act under the Plan is required to be made or falls on a date which shall be a Saturday, Sunday or a legal holiday, then the making of such payment or performance of such act may be completed on the next succeeding Business Day and shall be deemed to have been completed timely.

## ARTICLE III
## MEANS FOR EXECUTION

### 1. Plan Funding

Payments under the Plan due on the Effective Date shall be paid either by the Debtor from the (i) Debtor Plan Fund or (ii) from the proceeds of the sale of the Property following an Alternate Sale Process with the potential additional funding from the Secured Lender.

The Debtor shall have until the Payoff Deadline to fund the Debtor Plan Fund in which case title to the Property shall be revested in the reorganized Debtor upon the Effective Date, free and clear of all liens, claims and encumbrances, subject to the obligations of the reorganized Debtor set forth herein. Otherwise, the Property shall remain subject to the senior mortgage lien of the Secured Lender until such time as the Property is sold in the Alternate Sale Process pursuant to the terms of this Plan and the Bidding Procedures. Nothing contained in this Plan shall be deemed to impair or alter the right of the Secured Lender to assign its mortgage lien to the purchaser of the Property at closing if the parties elect to do so.

### 2. Alternative Sale Process

Notwithstanding the Debtor's right to fund the Debtor Plan Fund prior to the Payoff Deadline, upon Confirmation, the Secured Lender shall be authorized to engage the services of a real estate broker/ auctioneer and to utilize their services market the Property for sale. The auction sale may be noticed throughout the marketing process but may not occur until after the Payoff Deadline. The sale of the Property pursuant to the Alternative Sale Process shall be free and clear of all liens, Claims, interests and encumbrances pursuant to sections 363(f), 1123(a)(5)(D) and 1141(c) of the Bankruptcy Code including, among other things, all violations, whether reduced to judgment or otherwise. The winning bidder of the Property shall be entitled to the protections afforded a buyer pursuant to section 363(n) of the Bankruptcy Code.

### 3. Exemption from Certain Taxes

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Plan as confirmed by the Bankruptcy Court, (including an instrument of transfer executed in furtherance of the Sale Transaction), shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax, mansion tax, or similar tax due on the sale of the Property in connection with or in furtherance of the Plan as confirmed by the Bankruptcy Court and the funding requirements contained herein and shall not be subject to any state, local or federal law imposing such tax and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## ARTICLE IV
## RESOLUTION OF DISPUTED CLAIMS

 **A.** **Claim Objection Deadline.** All Objections to Claims shall be filed on or before the thirtieth (30th) day after the Effective Date.

 **B.** **Reservation of Rights.** Unless a Claim is specifically Allowed prior to or after the Effective Date, then all rights of the estate are expressly reserved any and all objections may still be asserted by either the Secured Lender or the Debtor to any and all Claims and motions or requests for the payment of Claims, whether administrative expense, secured or unsecured, including without limitation any and all objections to the validity or amount of any and all alleged Administrative Expense Claims, Priority Claims, liens and security interests, whether under the Bankruptcy Code, other applicable law or contract. The failure to object to any Claim prior to the Effective Date shall be without prejudice to contest or otherwise defend against such Claim in the Bankruptcy Court when and if such Claim is sought to be enforced by the holder of the Claim. Notwithstanding the foregoing, the Class 2 Claim of the Secured Lender shall be deemed Allowed on the Confirmation Date.

 **C.** **Disputed Claims Reserve.** Except to the extent the Court determines that a lesser amount is adequate, the Disbursing Agent shall deposit in Cash equal to the distribution hereunder that would have been made to holders of Disputed Claims, on such date and in such amount, that the holder would have received its distribution hereunder if such Claims were Allowed Claims, unless otherwise agreed by the holder or by Order of the Court. Upon request of the Debtor, estimation of any Disputed Claim may be adjudicated by the Court pursuant to section 502(c) of the Bankruptcy Code for purposes of determining the appropriate reserve amount.

 **D.** **Distribution upon Allowance.** As soon as practicable after a Disputed Claim becomes an Allowed Claim, there shall be distributed to the holder of such Allowed Claim, in accordance with the provisions of this Plan, Cash in the amount of all distributions to which such holder would have been entitled if such holder's Claim were Allowed on the Effective Date. To the extent that a Disputed Claim ultimately becomes an Allowed Claim and is entitled to a distribution in an amount less than the amount reserved for such Disputed Claim, then, as soon as practicable, the Debtor's estate shall make, in accordance with the terms of this Plan, a distribution of the excess amount reserved for such Disputed Claim.

## ARTICLE V
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

 On the Effective Date, all Executory Contracts and Unexpired Leases to which Debtor is a party, unless a separate motion to reject is made or order entered, shall be deemed rejected in accordance with Section 365 of the Bankruptcy Code. Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be treated as Unsecured Claims and shall be filed with the Bankruptcy Court and served so that it is received by the Debtor and the Secured Lender no later than ten (10) days prior to the first date noticed for the Confirmation Hearing. Any such Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor or the Property.

# ARTICLE VI
## EFFECT OF CONFIRMATION OF PLAN

### A. Discharge

Subject to the continuing obligations and terms under this Plan, which shall survive Confirmation, and to the extent that the Debtor is successful in funding the Debtor Plan Fund, it shall be discharged of liability for payment of debts incurred before Confirmation, to the extent specified in 11 U.S.C. § 1141. However, any liability or conditions imposed upon the Debtor by the Settlement or Plan will not be discharged. The provisions of this Plan shall be binding upon the Debtor, all Creditors, regardless of whether such Claims are Impaired or whether such parties accept this Plan, upon Confirmation thereof. In the event of an Alternate Sale Process, the Debtor shall not receive a discharge.

### B. Exculpation.

*Neither the Secured Lender, nor any of their members, estate fiduciaries, officers, directors, employees, advisors, agents, representatives and assigns (the "Exculpated Parties") shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the chapter 11 case or the Plan and any related agreement except for bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts. Notwithstanding any other provision hereof, nothing in Article VI hereof shall (a) effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Exculpated Parties, nor shall anything in this section enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against any of the Exculpated Parties referred to herein for any liability whatever, including, without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority, nor shall anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Parties referred to herein, or (b) limit the liability of the Secured Lender's professionals to the Debtor pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.*

### C. Confirmation Injunction.

*Upon the Effective Date, all persons who have held, hold or may hold Claims or Interest are enjoined from taking any of the following actions against or affecting the Debtor or assets of*

*the Debtor with respect to such Claims, Interest or Administrative Claims, except as otherwise set forth in the Plan, and other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order:*

> *(i) Commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, arbitration, or other proceeding of any kind against the Debtor or the assets of the Debtor regarding the Claims or Interest arising out of any act or omission of the Debtor;*

> *(ii) Enforcing, levying, attaching, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the assets of the Debtor with regard to such entities' Claim against the Debtor;*

> *(iii) Creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the property of the Debtor, or any successor-in-interest to the Debtor;*

> *(iv) Asserting any setoff, right of subrogation, or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, the property of the Debtor, or any successor-in-interest to the Debtor; and*

> *(v) Proceeding in any manner and any place whatsoever that does not conform to or comply with the provisions of the Plan.*

**D.      Revesting of Property in the Reorganized Debtor**

In the event that the Debtor is able to successfully fund the Debtor Plan Fund and avoid the Alternate Sale Process, the Confirmation of the Plan and more specifically the entry of the Confirmation Order shall serve to revest all of the property of the estate in the reorganized Debtor, subject to the terms of this Plan.

**ARTICLE VII**
**RETENTION OF JURISDICTION**

The Bankruptcy Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, pending the final allowance or disallowance of all Claims affected by the Plan, and to make such orders as are necessary or appropriate to carry out the provisions by this Plan.

In addition, the Bankruptcy Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under Section 1142, sub-paragraphs (a) and (b) of the Bankruptcy Code and with respect to the following matters:

(a)      To enable the Debtor or Secured Lender to consummate the Plan and to resolve any disputes arising with respect thereto.

(b)     To enable the Debtor or Secured Lender or its assignee to consummate any and all proceedings which it may bring to set aside liens or encumbrances, and to recover any preferences, transfers, assets or damages to which it may be entitled under applicable provisions of the Bankruptcy Code or other federal, state or local law.

(c)     To adjudicate all controversies concerning the classification or allowance of any Claim.

(d)     To hear and determine all Claims arising from the rejection of any executory contracts, including leases, and consummate the rejection and termination thereof or with respect to any executory contracts to which an application for rejection or termination is filed prior to the entry of the Confirmation Order.

(e)     To liquidate damages in connection with any disputed, contingent, or unliquidated Claims.

(f)     To adjudicate all Claims to a security or ownership interest in any property of the Debtor or in any proceeds thereof.

(g)     To adjudicate all Claims or controversies arising out of any purchases, sales, or contracts made or undertaken by the Debtor during the pendency of the within proceedings.

(h)     To allow the Debtor or Secured Lender to recover all assets and properties of the Debtor wherever located.

(i)     To make such orders as are necessary or appropriate to implement the provisions of the Plan, including the enforcement of the releases and injunctions set forth in the Plan.

## ARTICLE VIII
## MISCELLANEOUS PROVISIONS

### A. Preservation of Claims

All rights pursuant to Sections 502, 544, 545 and 546 of the Bankruptcy Code, all preference claims pursuant to Section 547 of the Bankruptcy Code, all fraudulent transfer claims pursuant to Section 548 of the Bankruptcy Code, and all claims relating to post-Petition date transactions under Section 549 of the Bankruptcy Code shall be preserved for the benefit of the Debtor's estate; provided, however, that either the Debtor or the Secured Lender shall have the authority for prosecuting any such claims.

**B. Modification of Plan.** The Secured Lender may not modify the Plan at any time before it is substantially consummated subject to approval of the Bankruptcy Court.

**C. Notices.** Any notices to be forwarded under the Plan shall be in writing and sent by certified mail, return receipt requested, postage pre-paid; or by overnight mail or hand delivery, addressed as follows:

If to Secured Lender:        KIRBY AISNER & CURLEY LLP
700 Post Road, Suite 237
Scarsdale, New York 10583
Attn:  Erica R. Aisner, Esq.

If to the Debtor:        McKINLEY ONUA & ASSOCIATES
233 Broadway, Suite 2348
New York, New York 10279
Attn: Nnenna Okike Onua, Esq.

The above notice parties may designate in writing any other address for purposes of this section, which designation shall be effective upon receipt.  Any payment required under the Plan shall be deemed to have been paid on the date when such payment is paid by the Disbursing Agent.

**D. Enforceability.** Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any and all other provisions of the Plan.

**E. Applicable Law.** Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

**F. Successors and Assigns.** The rights and obligations of any entity named or referred to in the Plan shall be binding upon and inure to the benefit of the successors and assigns of such entity.

**G. Reservation of Rights.** Neither the filing of this Plan, nor any statement or provision contained herein, shall be or be deemed to be an admission against interest. In the event that the Effective Date does not occur, neither this Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of the Chapter 11 case except that the Settlement shall remain enforceable if approved by the Bankruptcy Court.

**H. U.S. Trustee Fees and Monthly Operating Reports**. After the Confirmation Date, the Debtor's estate will pay or cause the payment of fees, and any applicable interest, incurred pursuant to 28 U.S.C. § 1930(a)(6) and 31 U.S.C. § 3717 and will file or cause the filing with the Bankruptcy Court and serve or cause service on the U.S. Trustee of post-confirmation reports while the Chapter 11 case remains open, unless the Bankruptcy Court orders otherwise.

**I. Payment of Professionals for Post-Confirmation Date Services**. The reasonable compensation and out-of-pocket expenses incurred post-Confirmation Date by the Debtor's Professionals, shall be paid by the Debtor within twenty (20) days after presentation of invoices. In the event that the Alternate Sale Process goes into effect, Secured Lender shall have no responsibility for the payment of any such post-Confirmation Date fees. If the Debtor and any Professionals cannot

agree on the amount of post- Confirmation Date fees and costs to be paid to such Professionals, such amount shall be determined by the Bankruptcy Court.

     **J.**     **Closing the Case.** The reorganized Debtor or Secured Lender shall file a motion pursuant to Section 350 of the Bankruptcy Code seeking a final decree at such time that substantial consummation has occurred. Notwithstanding the closure of the Chapter 11 Case, nothing herein shall prevent the reorganized Debtor or Secured Lender from completing or instituting such proceedings as may be necessary for the enforcement of any claim of the Debtor which may have existed against any third party prior to closing the Chapter 11 Case and which may have not been enforced or prosecuted prior to the closing of the Chapter 11 Case.

Dated:  Darian, Connecticut
       September 18, 2025

                       FAIRBRIDGE CREDIT LLC


                       By:   */s/ John Lettera*     
                       John Lettera, Managing Member


                       KIRBY AISNER & CURLEY LLP
                       *Attorneys for Plan Proponent/Secured Creditor,*
                       *Fairbridge Credit LLC*
                       700 Post Road, Suite 237
                       Scarsdale, New York 10583
                       (914) 401-9500


                       By:*/s/ Erica R. Aisner*      
                       Erica R. Aisner, Esq.